Welch, J.
The question mainly argued in this case is whether by the laws of Ohio, and particularly under the twelfth section of the general railroad act (1 S. & C. 278), there is any power given by which a canal can be condemned and converted into a railroad against the will of the owners of the canal. We think the question does not necessarily arise in the case, and therefore leave it undetermined. It is a question which the plaintiffs are not in a position to raise. Where a party stands by, as we pi’esume the *180 plaintiffs to have done in the present case, and silently sees a public railroad constructed upon his land, it is too late for him, after the x’oad is completed, or large sums have been expended on the-faith of his apparent acquiescence, to seek by injunction, or otherwise,'to deny to the railroad company the right to use the property. Considerations of public policy, as well as recognized principles of justice between parties, require that we should hold, in such cases that the property of the owner can not be reclaimed, and that there'only remains to him a right of compensation. The-injunction in the px’esent case might have been sought at the fix’st-known attempt, or even threat, to despoil the canal, or to construct, the railroad upon its line. The omission to do so is an implied' assent. The wox’k being completed, the public, as well as those-directly interested in the road, as stockholders arid creditox’s, have-a right to insist on the application of the xmle that he who will xxot. speak when he should, will not be allowed to speak when he would.. So far, therefore, as regards the relief by way of injunction, or the right of the Cincinnati and. Indiana Railroad Company to the contixiued use of the property, we deem it quite immatexual whether-the proceedings of condemnation and appropriation are void ox-valid ; or if void, whether they are so for want of power in the-180] railroad company to condemn, for want *of power in the canal: company to agree upon the price, or for want of an assessment by a jury. It is enough to know that the appropriation has in fact been made, and that the plaintiffs have delayed their suit so long,, and under such circumstances, that to grant the request now would wox’k a great public ixxjxxxy, and be a virtual fraud upon the-Cincinnati axxd Indiana Railroad Company.
The case is faix’ly within the principle settled ixx that of Chapman & Harkness v. Railx-oad Companies, 6 Ohio St. 136. It may well be said in the present case, as the court said in the case referred to: • • • • “ Before a stockholder can be entitled to a. remedy by injunction against such departure from the original objects of the incorporation, he must have shown himself prompt, and vigilant in the assertion of his rights, as such stockholder. It. will not do for him to wait until the mischief of which he complains is accomplished, fortuxxes expended, and great public interests created. If he does he must be held to have acquiesced in the-change, or to content himself with some other form of remedy.”
Precisely the same point was determined in Kellog v. Ely, 15 *181 Ohio St. 64, where the court say, when speaking of the plaintiff’s, right to an injunction : • • • • “ Eemaining inactive and silent until his swamp lands were drained by a ditch of nearly a mile in length, he then, for the first time, asks the interposition of a court •of equity. We think he comes too late.”
The question of compensation, however, stands upon a very different basis. The railroad company having acquired this property, ought to pay for it a fair value, unless by an agreement between the parties, such as a court of equity will uphold, a less price has been fixed. Was $55,000, then, a fair value for the property? And, if not, did the parties by a valid agreement fix upon a less sum ? These, it seems to us, are the only questions remaining in the case, and we are constrained to answer them in the .negative. "We think the price was grossly inadequate, and that the agreement can not be sustained in a court of equity.
In the case of Hatch v. The Cincinnati and Indiana Railroad *Company, decided at the present term of this court,† the [181 railroad company claimed, and the court held, that the appropriation of the canal to railroad purposes did not work a reversion of the property to the original proprietors; in other words, that the canal company had a perpetual easement in the property, which was tranferable to a railroad company, and of course were entitled to receive a full compensation therefor. The court below, in the present ease, refused to hear evidence of value based upon that view of the law, but enough of evidence appears in the bill of exceptions, notwithstanding the refusal of the court, to show that the property was worth vastly more than $55,000, the price paid. True, the evidence shows that the property was of little value as a canal. As such, in the language of defendants’ witnesses, it was “ played out.”It seems to have been as such that it was appraised, upon the interlocutory order of sale, and as such it must have been valued by the two boards of directors at the time of its sale or pro forma condemnation. This was no fair method of estimating the value of the property. The true value of anything is what it is worth when .applied to its natural and legitimate uses — its best and most valuable uses. The estimate should have been of its value generally, for any and all uses, and not for any particular, and especially not for any inferior or inappropriate use. It is in vain to say that the *182 property is worth little to the canal company, because they have-no power, as such, to convert it into a railroad. The stockholders and creditors of the canal company could organize themselves into a railroad company at any time, and thus realize the full value of the easement. But, even if they could not, that is no reason why their property should be taken from them at less than its value. The railroad company should pay somebody for this property. She refuses to pay the original owner's for it, because, she says, the canal company, by transferring it to her, prevented its relapse to such original owners; and she refuses to pay the canal company anything more than a nominal price for it, because, she says, if the-canal company had not transferred it to her, it would have relapsed; 182] and as the result of this logic, she gets the ^property for a merely nominal price. She gets it as a kind of waif, which, failing to find an owner, somehow falls into her hands as the fortunate-finder. The insolvency of the canal company is a poor reason to render for refusing to pay her a fair price for her property. If she-is insolvent, she has the more need of a full price.
As to the agreement by which the price or compensation was-fixed at 155,000, we have no hesitation in saying that it ought not to be allowed to stand, so as to affect the rights of those who gave-no assent thereto. Without attempting to decide as to the power-of directors, in the absence of authority given by the stockholders, to fix a price or compensation for the property so sought to be appropriated, it is enough to.say that this is not such an agreement as equity will sustain. |Therewas not only such a gross'inadequacy of price as to shock the moral sense, but there was, in effect, a sale-by a trustee to himself, or to his own use and benefit. This equity will never permit, not even where there is good faith and an adequate consideration. Here there was neither. The vendor and purchaser were in the same interest. As directors of the canal-company, it was the duty of Mr. Lord and his associates to obtain the highest price for the property, while as stockholders of the railroad company, it was their interest to get it as low as possible. It was, in effect, a sale by the railroad company to itself. There was-no adverse interest or adversary parties, and the sale was a mere form. Nothing is better settled in equity than that such a transaction on the part of a trustee does not bind the cestui que trust. It is equally well settled that the property of a corporation is á trust fund in the hands of its directors, for the benefit of its creditors *183 and stockholders. 2 Story’s Eq. 1252; Aberdeen Railroad Co. v. Blakie, 1 Macqueen, 461; Wood v. Dummer, 3 Mason, 309. If it. was desired or intended to make such a purchase of the property as would bind the stockholders and creditors of the canal company,. all of them should have either been consulted or bought out. That would have been the fair way to accomplish the object To undertake, by getting control of the company, and then, under pretense-of acting as agents and trustees for all the '-¡^stockholders and [183¡ creditors, deliberately to trample under foot the rights of the minority, is rather a sharp practice, and one which a court of equity will never tolerate. A director whose personal interests are adverse to those of the corporation has no right to be or act as a director. As soon as he finds that he has personal interests which are in conflict with those of the company, he ought to resign. No matter if a majority of the stockholders, as well as himself, have personal interests in conflict with those of the company. He does not represent them as persons, or represent their personal interest. He represents them as stockholders, and their interests as such. He is trustee for the company, and whenever he acts against its interests — no matter how much he thereby benefits foreign interests of the individual stockholders, or how many of the individual stockholders act with him — he is guilty of a breach of trust, and a court of equity will set his acts aside, at the instance of stockholders or creditors who are damnified thereby. Any act of the directory by which they intentionally diminish the value of the stock or property of the company is a breach of trust, for which any of the stockholders or creditors may justly complain, although all the other stockholders and creditors are benefited, in some other way, more than they are injured as such.
While, therefore, we are of opinion that the court below was right in refusing the plaintiffs an injunction, in refusing to set the sale or appropriation aside, and in refusing to place the property in the hands of a receiver, we think the court erred in rejecting testimony as to the general value of the property, and in not finding and holding that the Cincinnati and Indiana Railroad Company was liable to account to the canal company for the full valué of the property taken, less the said sum of $55,000, already paid, and in refusing to grant a new trial on that ground.
Judgment reversed, and cause remanded for a new trial and further proceedings.
Day, C. J., and Brinkerhoff, Scott, and White, JJ., concurred.

 Ante p. 92.